# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 19-830V
UNPUBLISHED

| | |
|---|---|
| DANIEL JOSEPH MARTIN, | Chief Special Master Corcoran |
| Petitioner, | Filed: May 5, 2021 |
| v. | Special Processing Unit (SPU); Decision Awarding Damages; Pain and Suffering; Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Kevin Kelly Fitzharris, Barrett McNagny LLP, Fort Wayne, IN, for Petitioner.*

*Zoe Wade, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION AWARDING DAMAGES[1]

On June 5, 2019, Daniel Joseph Martin filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that he suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine administered on October 2, 2017. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU") – and although the parties agreed Petitioner should receive compensation for his injury, they could not resolve the damages to be awarded, so the matter was submitted for an SPU Motions Day hearing.

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons described below, and pursuant to my oral ruling on April 30, 2021 (which is fully adopted herein), **I find that Petitioner is entitled to an award of damages in the amount of $102,764.79, representing** $**100,000.00 for actual pain and suffering, and $2,764.79 for past unreimbursable expenses.**

## I.      Relevant Procedural History

As noted above, this case was initiated on June 5, 2019. On October 20, 2020, Respondent filed a Rule 4(c) Report (ECF No. 23) conceding entitlement, and I issued a ruling finding Petitioner entitled to compensation on October 26, 2020. ECF No. 24.

On November 30, 2020, Petitioner filed a status report stating that the parties were unable to reach a settlement and requested that I determine damages. ECF No. 27. On January 4, 2021, the parties confirmed that they had reached an impasse concerning the appropriate compensation for Petitioner's pain and suffering, although they agreed $2,764.79 was appropriate compensation for Petitioner's unreimbursable expenses. ECF No. 29. I subsequently set a briefing schedule to resolve this issue. ECF No. 32.

The parties filed their respective briefs simultaneously on February 12, 2021. Respondent's Brief on Damages ("Res. Br."), ECF No. 33; Petitioner's Brief in Support of Damages ("Pet. Br."), ECF No. 34. On March 15, 2021, I proposed that the parties be given the opportunity to argue their positions at an SPU Motions Day hearing, at which time I would decide the disputed pain and suffering issue. ECF No. 35. The parties confirmed that they were amenable to this proposal (ECF No. 36), and the hearing was held on April 30, 2021. This written decision memorializes my resolution of the matter.[3]

## II.     Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health &*

---

[3] At the end of the hearing, I issued an oral ruling from the bench on damages in this case. That ruling is set forth fully in the transcript from the hearing, which is yet to be filed with the case's docket. The transcript from the hearing is, however, fully incorporated into this Decision.

*Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And I may of course rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[4] *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. *Graves v. Sec'y of Health & Hum. Servs.,* 109 Fed. Cl. 579, 489-90 (2013). In *Graves*, Judge Merrow rejected a special master's approach of awarding compensation for pain and suffering based on a spectrum from $0.00 to the statutory $250,000.00 cap. Judge Merrow maintained that to do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Graves*, 109 Fed. Cl. at 590. Instead, Judge Merrow assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id*. at 595. Under this alternative approach, the statutory

---

[4] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap.

## III.    Appropriate Compensation in this SIRVA Case

Mr. Martin's awareness of his injury is not disputed, leaving only its severity and duration to be considered. In determining an appropriate pain and suffering award, I have carefully reviewed the complete record in this case. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating such cases. However, my determination is ultimately based upon the specific circumstances of this case.[5]

Citing five prior damages determinations, Mr. Martin requests an award of "no less than $125,000 and no more than $170,000 for pain and suffering." Pet. Br. at 6-8.[6] He asserts that the severity of his injury is comparable to the aforementioned SIRVA cases, in particular those involving surgery, similar treatment periods, and similar procedures. *Id.* Petitioner also emphasizes that his need for shoulder surgery and duties associated with the care of his young, active family further added to his pain and suffering. And Mr. Martin contends that he continues to experience residual symptoms and limitations, such as ligament pinching, stiffness, and soreness. *Id.* at 8.

Respondent, by contrast, submits that an award of $80,000.00 is appropriate for pain and suffering. Res. Br. at 1. Petitioner's pain and suffering warrants a lower amount than other cases involving surgery because his pain was consistently characterized as mild, and was thus less severe than otherwise-comparable cases. *Id.* at 3. Respondent cites to three cases in particular - *Dhanoa*, *Marino*, and *Dirksen* - in which petitioners received between $75,000.00 and $85,000.00 for pain and suffering.[7]

---

[5] A more complete recitation of the facts can be found in the Petition, Respondent's Rule 4(c) Report, and the parties' briefing.

[6] The cases cited are *Drake v. Sec'y of Health & Hum. Servs.*, No. 18-1747V, 2020 WL 4674105 (Fed. Cl. July 7, 2020) (awarding $125,000.00 for pain and suffering); *Roberson v. Sec'y of Health & Hum. Servs.*, No. 19-90V, 2020 WL 5512542 (Fed. Cl. Aug. 7, 2020) (awarding $125,000.00 for pain and suffering); *Tumolo v. Sec'y of Health & Hum. Servs.*, No. 16-343V, 2020 WL 6279711 (Fed. Cl. Oct. 1, 2020) (awarding $170,000 for pain and suffering); *Randazzo v. Sec'y of Health & Hum. Servs.*, No. 18-1513V, 2021 WL 829572 (Fed. Cl. Feb. 1, 2021) (awarding $125,000.00 for pain and suffering); and *Gunter v. Sec'y of Health & Hum. Servs.*, No. 17-1941V, 2020 WL 6622141 (Fed. Cl. Oct. 13, 2020).

[7] *Dhanoa v. Sec'y of Health & Hum. Servs*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018) (awarding $85,000.00 for past pain and suffering); *Marino v. Sec'y of Health & Hum. Servs.*, No. 16-0622V, 2018 WL 2224736 (Fed. Cl. Spec. Mstr. Mar. 26, 2018) (awarding $75,000.00 for pain and suffering); *Dirksen v. Sec'y of Health & Hum. Servs*, No. 16-1461V, 2018 WL 6293201 (Fed. Cl. Spec. Mstr. Oct. 18, 2018) (awarding $85,000.00 for past pain and suffering).

The overall severity of the injury at issue is not high enough to warrant the magnitude of the award requested by Petitioner. Petitioner's initial post-vaccination symptoms were significant, as evidenced by communications made by Petitioner to his physician eleven days after his vaccination regarding pain and reduced range of motion. Ex. 4 at 2. However, Petitioner's pain was only ever described in the record as mild. Ex. 5 at 48 (record from October 23, 2017 describing Petitioners' pain as mild and not waking him at night); *Id.* at 42 (record from March 5, 2018 describing Petitioner's pain as mild); *Id.* at 37 (record from April 30, 2018 describing Petitioner's pain as mild). Further, there was an eighteen-week period where Petitioner did not seek any treatment, and his therapy consisted only of an at-home exercise program. This indicates Mr. Martin's pain was not particularly severe between October 23, 2017, and March 5, 2018.

I also note that Petitioner received a cortisone injection on May 5, 2018, due to his shoulder pain. Ex. 5 at 44. Further, an MRI completed on May 3, 2018 revealed tendinosis, a small insertional tear, and signs of adhesive capsulitis. *Id.* at 31, 37. Petitioner subsequently underwent a surgical procedure consisting of an examination and arthroscopic subacromial decompression on May 17, 2018. Ex. 6 at 4. These are the kinds of factors that, when present, usually support a higher than median pain and suffering award.

Significantly, however, Petitioner's post-surgical medical records suggest he made a strong and relatively quick recovery (as compared to other SIRVA cases involving surgical intervention). Over the subsequent three months, Petitioner underwent 16 physical therapy appointments (less than many similarly-situated petitioners). Ex. 7. By August 8, 2018 (less than three months after his surgery), Petitioner exhibited a full range of motion and reported he was able to do push-ups and his golf swing with no pain. *Id.* at 32. At his follow-up orthopedic appointment, Petitioner stated he still experienced a pinching pain when throwing a baseball and stiffness, however he was not taking any medications for the pain. Ex. 5 at 12.

In his brief, Petitioner alleged continuing pain and difficulty performing activities of daily living. Pet. Br. at 8. But based on his medical records and the lack of any subsequent treatment after October 22, 2018, it appears Petitioner was largely recovered by that date – approximately 12 months post-vaccination. My award for pain and suffering has accounted for the cumulative record evidence documenting his pain and functional limitations (both pre- and post-surgery), the cortisone injection, MRI findings, the May 2018 arthroscopic procedure, physical therapy, and overall treatment course and duration.

In addition, I note that the other SIRVA decisions Petitioner cites are largely distinguishable. Although it is true the petitioners in these cases underwent shoulder

surgeries as here, their treatment courses reflect that they experienced more significant injuries, reported more severe pain over longer periods, and underwent more physical therapy.[8] The overall facts of this case in comparison suggest a less severe SIRVA, and hence a lower pain and suffering award.

Respondent's cases are also distinguishable however, as none involved surgery. Indeed, Respondent's counsel conceded the cited cases are not directly comparable, but nevertheless argued for their consideration, since they involved petitioners with more severe pain and longer courses of treatment than exhibited in Mr. Martin's case. That may be true – but the reference to comparable pain and suffering decisions requires comparison of *directly comparable* matters. Thus, even if those petitioners could demonstrate *some* components of their pain and suffering were worse, the fact that Mr. Martin required surgery, while none of these comparable individuals did, remains a fair grounds for concluding that a larger award is justified in this case.

The facts in this case are instead, in my reasoned determination, most analogous to those in *Wilt v. Sec'y of Health & Human Servs.*, No. 18-446V, 2020 WL 1490757 (Fed. Cl. Spec. Mstr. Feb. 24, 2020) (awarding $110,000.00 in pain and suffering). As here, the *Wilt* petitioner sought medical treatment very soon after vaccination (five days), and the total duration of treatment was approximately one year. Both petitioners underwent surgery, and experienced a fairly swift recovery. However, a slightly lower pain and suffering award is warranted in this matter than what was awarded in *Wilt*. The *Wilt* petitioner received more physical therapy (20 sessions vs. 16 sessions), and her shoulder surgery involved additional procedures (along with an arthroscopic rotator cuff repair and subacromial decompression). She also underwent biceps tenotomy and major debridement of the shoulder. *Wilt*, 2020 WL 1490757, at *3-8. Further, unlike in *Wilt*, Petitioner's pain was consistently reported as mild. The above differences support a somewhat lower award for Petitioner's pain and suffering in the present case.

## IV.    Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $100,000.00 represents a fair and appropriate amount of**

---

[8] See *Drake*, 2020 WL 4674105, at *2-*3 (explaining that petitioner suffered a more severe injury and surgical procedure, reported ten months of moderate pain prior to surgery and seven months of recovery); *Roberson*, 2020 WL 5512542, at *3-*4 (describing a significantly more severe injury and course of treatment including arthroscopic surgery, 13 physical therapy session prior to surgery, 21 sessions after, two steroid injections and two MRIs; *Tumolo*, 2020 WL 6279711, at *14-*16 (describing petitioner's injury as moderate-to-severe SIRVA and treatment over approximately 20 months including two steroid injections, 14 physical therapy appointments, four MRI's and surgery); *Randazzo*, 2021 WL 829572, at *7-*8 (showing that petitioner consistently described her pain as severe (6-8 out of 10) even months after her surgery).

compensation for Mr. Martin's actual pain and suffering.[9] I also find that Petitioner is entitled to $2,764.79 for past unreimbursable expenses.

Accordingly, **I award a lump sum payment of <u>$102,764.79</u> in the form of a check payable to Petitioner.** This amount represents compensation for all remaining damages that would be available under Section 15(a).

The Clerk of the Court is directed to enter judgment in accordance with this decision.[10]

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master

---

[9] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* § 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[10] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.